[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15193
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cr-60050-RNS-4


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SANTOS GONZALES-CAHVEC,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 20, 2018)

Before WILSON, NEWSOM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Santos Gonzales-Cahvec appeals his convictions and 240-month concurrent sentences for (1) possession with intent to distribute five kilograms or more of a substance containing cocaine on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a) and 18 U.S.C. § 2 and (2) conspiracy to possess with intent to distribute five kilograms or more of a substance containing cocaine on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70506(b).

On appeal, Gonzales-Cahvec argues (1) that his Sixth Amendment rights were violated because he was convicted by a jury of individuals from the Southern District of Florida, rather than the countries in which his offenses took place; (2) that 46 U.S.C. § 70502(c)(1)(C)—the Maritime Drug Law Enforcement Act's jurisdictional provision—is unconstitutionally vague; (3) that the district court abused its discretion by precluding him from reading into evidence two Department of State travel warnings for Colombia; and (4) that his sentence is substantively unreasonable.  After careful review, we affirm.

**I**

A United States Coast Guard helicopter crew spotted what appeared to be a drug-trafficking vessel traveling north in the Eastern Pacific Ocean.  Once the Coast Guard approached the ship—later identified as the Dios es Todo—it discovered that the vessel was of Colombian nationality.  Coast Guard officers

contacted the Government of Colombia to verify the Dios es Todo's registration, and the Government of Colombia granted the United States permission to exercise jurisdiction over the vessel.

Coast Guard officers then boarded the Dios es Todo and, after conducting a safety search, discovered 1,114 kilograms of cocaine stored in the fish hold.  The officers seized the cocaine, and transported Gonzales-Cahvec and the other crew members to Fort Lauderdale, Florida, transferring them to the custody of Homeland Security Investigations officers.

Once on land, Gonzales-Cahvec waived his *Miranda*[1] rights and claimed that he had been kidnapped while on vacation in Colombia and forced onto the Dios es Todo against his will.  Gonzales-Cahvec was subsequently indicted under the Maritime Drug Law Enforcement Act (hereinafter "Maritime Act").

Gonzales-Cahvec pleaded not guilty and proceeded to trial.  At trial, he maintained that he had been kidnapped and forced to participate in the drug run. Homeland Security Special Agent Marco Suarez testified for the Government, opining that, although not impossible, it was highly unlikely that a drug-trafficking organization would kidnap someone and force him to participate in a drug-trafficking operation because it would be "counterproductive to the team effort." Gonzales-Cahvec's trial counsel then attempted to read into evidence two

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Department of State travel warnings, declaring that "narco-trafficking"—including drug trade, extortion, kidnapping, and robbery—affected many areas of Columbia. The district court sustained the Government's objection to the warnings, however, because the warnings did not state that drug organizations kidnapped individuals and forced them to participate in trafficking.

After a five-day trial, the jury convicted Gonzales-Cahvec as charged in the indictment. Before sentencing, a probation officer prepared a presentence investigation report, which included an advisory guidelines range of 235 to 293 months' imprisonment. The district court imposed concurrent 240-month sentences, noting that the offense involved more than 1,000 kilograms of cocaine, and that Gonzales-Cahvec had "concoct[ed] a very[]detailed fantasy to avoid [his] responsibility in this case."

## II

Gonzales-Cahvec first argues that his Sixth Amendment rights were violated because, under the Maritime Act, he was tried and convicted by a jury of individuals from the Southern District of Florida rather than from the countries in which his offenses took place. We review constitutional challenges to statutes *de novo*. *United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014).

The Sixth Amendment provides that a criminal defendant has the right to a trial by "an impartial jury of the State and district wherein the crime shall have

4

been committed."  U.S. Const. amend. VI.  But Article III, Section 2 of the Constitution provides that when a crime is "*not committed within any State*, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. Const. art. III, § 2, cl. 3 (emphasis added); *Cook v. United States*, 138 U.S. 157, 181–83 (1891).

The Maritime Act makes clear that "if the offense was begun or committed upon the high seas, or elsewhere outside the jurisdiction of any particular State or district," the accused "may be tried in any district."  46 U.S.C. § 70504(b)(2).  This provision works in tandem with the Jury Selection and Service Act, which states that defendants entitled to a trial by jury have the right to a jury "selected at random from a fair cross section of the community in the district or division wherein the court convenes."  28 U.S.C. § 1861.

In *United States v. Rendon*, we held that a defendant's prosecution in the Middle District of Florida for offenses committed on the high seas complied with both Article III, Section 2 of the Constitution and the Maritime Act's venue provision because the defendant first entered the United States in the Middle District of Florida after having been apprehended.  354 F.3d 1320, 1325–26 (11th Cir. 2003).

This case is quite similar: Gonzales-Cahvec's offense occurred outside of the United States, on the high seas, so under Article III, Section 2 of the

5

Constitution, the Maritime Act controls his trial venue.  46 U.S.C. § 70504(b)(2).

Because Gonzales-Cahvec first entered the United States in the Southern District

of Florida, his prosecution in that venue was proper under both Article III, Section

2 of the Constitution and the Maritime Act.  *See Rendon*, 354 F.3d at 1325–26.

And because Gonzales-Cahvec's prosecution in the Southern District of Florida

complied with both the Constitution and the Maritime Act, his trial by a jury

consisting of individuals from the Southern District of Florida did not violate his

Sixth Amendment rights.  28 U.S.C. § 1861; *Rendon*, 354 F.3d at 1325–36.

### III

Gonzales-Cahvec next argues—without citing any precedent—that the

Maritime Act's jurisdictional provision, 46 U.S.C. § 70502(c)(1)(C), is

unconstitutionally vague.  Gonzales-Cahvec contends that § 70502(c)(1)(C) is

unconstitutional because it arbitrarily provides for United States jurisdiction on the

"whim" of foreign countries and does not provide any standards by which foreign

countries can determine whether or not they should grant the United States

jurisdiction**.**  We review vagueness challenges to statutes *de novo*.  *United States v.*

*Awan*, 966 F.2d 1415, 1424 (11th Cir. 1992).

Under the Fifth Amendment's Due Process Clause, a statute cannot be

enforced if it is so vague that it fails to provide fair warning such that people of

"common intelligence" must "guess at its meaning" or reach differing opinions as

6

to its application.  *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008).  Due process in the context of extraterritorial jurisdiction requires only that the exercise of jurisdiction not be arbitrary or fundamentally unfair.  *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016).

The Maritime Act makes it a crime for any person to "knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance" on board "a vessel subject to the jurisdiction of the United States," or to conspire to do so.  46 U.S.C. §§ 70503(a)(1), (e)(1) and 70506(b).  Section 70502 of the Maritime Act—the provision that Gonzales-Cahvec challenges—defines a vessel subject to the jurisdiction of the United States to include "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States."  46 U.S.C. § 70502(c)(1)(C).

In *United States v. Mena*, we rejected a vagueness challenge to the nearly-identical jurisdictional provision of the Maritime Act's predecessor statute, 46 U.S.C. app. § 1903, which provided that a vessel subject to the jurisdiction of the United States includes "a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States."  863 F.2d 1522, 1527 (11th Cir. 1989); 46 U.S.C. app. § 1903(c)(1)(C) (2002).  We held that § 1903 was not unconstitutionally vague,

7

because "[t]hose embarking on voyages with holds laden with illicit narcotics, conduct which is contrary to laws of all reasonably developed legal systems, do so with the awareness of the risk that their government may consent to enforcement of the United States' laws against the vessel." *Mena*, 863 F.2d at 1527–28 (quoting *United States v. Gonzalez*, 776 F.2d 931, 940–41 (11th Cir. 1985)).  Because the language in § 70502(c)(1)(C) does not differ in any meaningful way from § 1903, the same conclusion follows here―§ 70502(c)(1)(C) is not unconstitutionally vague.

Additionally, this Court has consistently rejected constitutional challenges to the exercise of jurisdiction under the Maritime Act.  *See, e.g.*, *United States v. Wilchcombe*, 838 F.3d 1179, 1186 (11th Cir. 2016) (holding that the Constitution and principles of international law supported the rejection of the defendant's due process challenge to the Maritime Act's prohibitions on drug trafficking committed outside of the United States, even where the conduct lacks a United States nexus), *cert. denied*, 137 S. Ct. 2265 (2017); *United States v. Tinoco*, 304 F.3d 1088, 1107–12, 1110 n.21 (11th Cir. 2002) (holding that due process does not require a nexus between the offense and the United States, and Congress properly defined jurisdiction as an issue to be decided by the court, rather than as an element of the offense, in the Maritime Act); *United States v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006) (same); *United States v. Cruickshank*, 837 F.3d 1182, 1187–88

8

(11th Cir. 2016) (same), *cert. denied*, 137 S. Ct. 1435 (2017).  This case is no different.  Put simply, Gonzales-Cahvec's prosecution under the Maritime Act did not violate the Fifth Amendment's Due Process Clause.[2]

## IV

Gonzales-Cahvec also asserts that the district court abused its discretion by sustaining the Government's objection to the introduction of two travel warnings for Colombia without explanation, particularly because he needed the warnings to rebut Agent Suarez's testimony.  Evidentiary rulings are reviewed for an abuse of discretion.  *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005).  To show that the district court abused its discretion in its application of the Federal Rules of Evidence, a defendant must show that the district court made a "clear error of judgment or applied an incorrect legal standard."  *United States v. Jones*, 601 F.3d 1247, 1263 (11th Cir. 2010).

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotations omitted).  Yet Federal Rule of Evidence 401 provides that irrelevant evidence is not admissible.  Fed. R. Evid. 401.  Rule 401 defines relevant

---

[2] Cahvec-Gonzales also argues briefly that, because his offense conduct ended when he was detained, his "criminal acts terminated hours before Colombia conferred jurisdiction, [and] he is actually innocent of these offenses."  This argument, however, is squarely foreclosed by our precedent in *United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017) (explaining that whether the statutory requirements for jurisdiction under the Maritime Act have been met is not an element of the crime, and thus its jurisdiction can be based on events occurring after the crime is committed).

9

evidence as evidence "having any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. This definition imposes two requirements: (1) that the evidence be probative of the proposition that it is offered to prove, and (2) that the proposition to be proved is one that is of consequence to the determination of the action. *United States v. Glasser*, 773 F.2d 1553, 1559 n.4 (11th Cir. 1985).

Here, the district court did not abuse its discretion by sustaining the Government's objection to the introduction of the travel warnings. The travel warnings that Gonzales-Cahvec sought to introduce stated that drug organizations kidnapped individuals for ransom, not that drug organizations kidnapped individuals to force them to participate in drug trafficking. Consequently, the warnings were not probative of the propositions that they were offered to prove— that individuals, like Gonzales-Cahvec, were kidnapped and forced to participate in drug operations against their will. *Glasser*, 773 F.2d at 1559 n.4. For the same reason, the travel warnings also would not have contradicted Agent Suarez's testimony that he had never heard of someone being kidnapped and forced into drug trafficking. Therefore, the district court did not abuse its discretion in sustaining the Government's objection to this evidence.

## V

Finally, Gonzales-Cahvec contests the reasonableness of his within-Guidelines sentence.  In reviewing a sentence for reasonableness, this Court "merely asks whether the trial court abused its discretion."  *Rita v. United States*, 551 U.S. 338, 351 (2007).  A district court abuses its discretion and imposes a substantively unreasonable sentence if it (1) fails to afford consideration to relevant 18 U.S.C. § 3553(a) factors that were due significant weight, (2) "gives significant weight to an improper or irrelevant factor," or (3) "commits a clear error of judgment in considering the proper factors."  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal citations omitted).

For a sentence to be substantively reasonable, the district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct.  *Id.* § 3553(a)(2).  The district court must also consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, and the applicable guidelines range.  *Id.* §§ 3553(a)(1),(3)–(5).

11

Although we do not automatically presume so, we ordinarily expect a within-Guidelines sentence to be reasonable. *Hunt*, 526 F.3d at 746. A sentence imposed well below the statutory maximum is another indicator of reasonableness. *See Gonzalez*, 550 F.3d at 1324 (concluding that the sentence imposed was not substantively unreasonable because, among other things, the sentence was "well below" the maximum sentence available).

Gonzales-Cahvec's 240-month sentence is not substantively unreasonable. As a starting point, it reflects the seriousness of trafficking more than 1,000 kilograms of cocaine—a "significant amount . . . even by South Florida standards," according to the district court. The evidence at trial showed that Gonzales-Cahvec played a major role in the offense, acting as the communications liaison for delivery of the cocaine and as the navigator in charge of the route the Dios es Todo was to take to Mexico. The evidence also showed that Gonzales-Cahvec had engaged in drug trafficking on at least one other occasion. Finally, Gonzales-Cahvec did not accept responsibility for his actions, but rather maintained his innocence through sentencing. 18 U.S.C. § 3553(a)(2).

Accordingly, Gonzales-Cahvec's sentence—squarely within the advisory guidelines range and well below the statutory maximum—is not substantively unreasonable because it does not reflect a clear error of judgment in weighing the

18 U.S.C. § 3553(a) factors.  18 U.S.C. §§ 3553(a)(1)–(7); *Rosales-Bruno*, 789 F.3d at 1256; *Gonzalez*, 550 F.3d at 1324.

## VI

For the foregoing reasons, we hold (1) that Gonzales-Cahvec's Sixth Amendment rights were not violated because he was tried in accordance with Article III, Section 2 of the Constitution and with the Maritime Act; (2) that 46 U.S.C. § 70502(c)(1)(C) is not unconstitutionally vague under our precedent; (3) that the district court did not abuse its discretion by denying Gonzales-Cahvec the opportunity to read irrelevant travel warnings into evidence; and (4) that Gonzales-Cahvec's within-Guidelines sentence is substantively reasonable. Accordingly, we affirm the district court's judgment.

**AFFIRMED.**